No. 17,083.

KELLY *v.* SINCLAIR ET AL.
(268 P. [2d] 1035)

Decided March 29, 1954.

Mr. JOHN M. BOYLE, Mr. MACK WITTY, for plaintiff in error.

Messrs. MURPHY & MORRIS, for defendants in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

WE herein refer to the parties by name or as they appeared in the trial court, where plaintiff in error was plaintiff and defendants in error were defendants.

Plaintiff, in an action instituted February 28, 1953, alleged that two certain tracts of land in Lake county, Colorado in the west ½ of the southeast ¼ of section 17,

township 11 S., range 80 west of the 6th P.M., and described by metes and bounds, were owned by Frank R. Kelly during his lifetime, and that he died seized and possessed of said lands; that plaintiff is the sole heir at law of Frank R. Kelly, and also is administrator of his estate.

Plaintiff further alleged that defendants were in possession of said lands by virtue of an oral agreement giving them permission to "move into the home of Frank R. Kelly, now deceased, and to live there in consideration of which the defendants were to care for the premises and cook meals for said Frank R. Kelly, deceased"; that upon written demand for possession thereof, defendants refused to deliver same to plaintiff; that certain items of furniture and household effects in the building occupied by defendants were the property of Frank R. Kelly. Plaintiff prayed judgment for possession of the premises; that defendants be ousted therefrom; and that plaintiff be awarded possession of said furniture and household goods.

It is agreed that Virginia Margaret Sinclair, named as a defendant in said action, departed this life prior to the commencement of plaintiff's suit, and that her husband, William Sinclair, the other defendant, succeeded to any and all claims she might have had to said property. The action proceeded against William Sinclair as sole defendant.

Defendant, by answer, admitted due demand for possession as alleged by plaintiff and denied the other allegations contained in his complaint. He claimed title in fee simple to the south ½ of the northwest ¼ and the west ½ of the southeast ¼ of section 17 aforesaid, by virtue of two quitclaim deeds recorded in the public records of Lake county, Colorado, "and by virtue of having paid taxes upon the above described property for a period in excess of nine years.

One of these deeds, claimed to have been executed in 1937 by Sara E. Sill, purported to convey to Sinclair

"a lot or parcel of land 50 feet front by 125 feet deep fronting the road running along the west shore of Lower Twin Lakes and adjoining the Kelly cottage on the north and the Fisher cottage on the south, and commonly known and called the 'Flintham Lot.'" This property was described as being in the southeast ¼ of section 17, township 11 S. range 80 west. The other deed, under which defendant claimed, was from Mildred Hall McQuaid and purported to convey the "South half of the Northeast quarter, West half of the Southeast quarter," in the same section, township and range, and was "subject to any and all existing rights-of-way or lots or parcels thereof previously conveyed, as may be shown by the records in the office of the County Clerk and Recorder, Lake County, Colo."

In his counterclaim, by which Sinclair sought to quiet his title to the property in question, he alleged that he was the owner and in possession of the south ½ of the northeast ¼, the northwest ¼ of the southeast ¼, part of the southwest ¼ of the southeast ¼ and a strip 100 feet by 125 feet, being a part of the southeast ¼ all in the same section, township and range aforesaid, and that he had paid all taxes assessed against said property for over nine years.

In answer to the counterclaim, plaintiff admitted that he claims some right, title or interest in and to the tracts of land described in his complaint, and denied that the title thereto was vested in Sinclair. Upon trial of the action, Sinclair relied on the "McQuaid" deed as the basis of his title.

The only findings of fact made by the trial court are the following:

"That the plaintiffs have wholly failed to establish the allegations of the First Cause of action of their Complaint." (This was plaintiff's claimed right to possession of the property acquired by Kelly from Ryan.)

" * * * that the allegations of Defendant, William Sinclair's Counterclaim insofar as the property hereinafter

particularly described is concerned are true and fully sustained by the evidence and that the Defendant, William Sinclair, is the owner in fee simple and in possession of the real estate described in said Counterclaim, as hereinafter set forth, and that the plaintiffs have no right, title, interest or claim or demand in and to the said real estate or any part or parcel thereof *except as hereinafter provided."* (Emphasis supplied.)

The exception above mentioned appears in the following language in the decree: "subject to existing rights-of-way of record and lots or parcels thereof conveyed prior to August 23, 1941 (being the date of Sinclair's deed), as may be shown by the records of the Clerk and Recorder of Lake County, Colorado." The title to the land claimed by Sinclair, with the exception just noted, was quieted as against the claims of plaintiff. Plaintiff brings the cause to this Court by writ of error.

Frank R. Kelly obtained title to the two tracts first above mentioned from Patrick J. Ryan by deed, dated November 24, 1923. This deed was recorded in Lake county, Colorado on November 30, 1923. Defendant Sinclair received a quitclaim deed, dated August 23, 1941, from Mildred Hall McQuaid to certain real property including the west ½ of the southeast ¼ of section 17, township 11 S., Range 80 west of the 6th P.M., Lake county, Colorado, in which conveyance it was recited that it was *"subject to any and all existing rights-of-way and lots and parcels thereof previously conveyed as may be shown by the records in the office of the County Clerk and Recorder of Lake County, at Leadville, Colorado."* (Emphasis supplied.)

The only positive evidence in the record concerning the location of the house in which Sinclair resided appears in the testimony of the surveyor, O. R. Smith. We quote from the record: "Q. Now I will ask you Mr. Smith where is the house that Mr. Sinclair is now living in located in regard to those tracts? A. It is on the property as set forth in the complaint." Mr. Smith previous-

ly had testified that he made a ground survey of the two tracts described in the complaint, and that these were in the northwest ¼ of the southeast ¼ of section 17.

Sinclair testified that he lived in the northwest ¼ of the southeast ¼ of section 17, and had so resided since December, 1938, when, as he testified, "Mr. Kelly allowed us to go in as it would be warmer for us." The following appears from the testimony of Sinclair: "Q. Now in 1941 did you purchase this property? A. Yes. Q. Did you get a deed for it? A. Yes." Thereupon he identified the McQuaid deed and it was received in evidence. Mr. Sinclair further testified: "Q. And the improvements are located in the northwest ¼ of the southeast ¼? A. Yes. Q. Did you remain in exclusive possession of the property since 1941 when you bought it? A. Yes. I have been in open and exclusive possession since then." He also testified that he had made no claim to title thereto until after he received his deed from McQuaid. We must, therefore, conclude that the only evidence before the trial court on this issue was the house located on the land described in the complaint, and that this land is situate in the northwest ¼ of the southeast ¼ of section 17.

It is not disputed that Kelly occupied the house which plaintiff asserted was on his land when he went fishing or hunting, and on occasion allowed others to use it. In 1937 he permitted a couple to occupy the cabin and they asked Kelly if he would permit the Sinclairs to occupy it because it was "warmer and more comfortable" than the one where the Sinclairs were living. Kelly gave his consent, and the Sinclairs moved in. They used Kelly's furniture and equipment; they paid no rent.

Counsel for defendant Sinclair, insist he acquired title to this land by virtue of section 143, chapter 40, '35 C.S.A., which reads: "Every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who shall, for seven successive years, continue in such possession, and shall also,

during said time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession by purchase, devise or descent, before said seven years shall have expired, and who shall continue such possession and continue to pay the taxes as aforesaid, so as to complete the possession and payment of taxes for the term aforesaid shall be entitled to the benefit of this section."

Sinclair was occupying the property by permission of Kelly; the furniture and some household goods in the house were admittedly the property of Kelly, for upon trial of this action Sinclair's counsel conceded that plaintiff was entitled to possession of this personal property.

By whatever term we might designate or characterize Sinclair's occupancy of the Kelly house, he was subject to eviction on proper notice, provided, however, that the cabin was located on the tracts of land to which Kelly had title.

Whether or not Sinclair was a tenant, still in order to justify a decree quieting his title it was incumbent upon defendant to produce clear and convincing evidence that he in good faith acquired color of title to the property in question; that for a period of seven years he paid the taxes legally assessed against the same; and that the property claimed by plaintiff was included in his "color of title."

A careful and painstaking reading of the entire record herein convinces us that the trial court arrived at the conclusions which resulted in the judgment and decree herein upon the mistaken assumption that the McQuaid deed gave Sinclair "color of title" and that by paying taxes on the land described in the McQuaid deed, Sinclair obtained a title superior to that held by Kelly. In arriving at this conclusion, the trial court was in error. The conveyance from McQuaid did not give Sinclair color of title. The very terms and provisions of the

deed indicate this, and from a casual reading of that conveyance Sinclair knew that any lots or tracts theretofore conveyed and appearing of record, were excepted from the lands and premises he acquired by virtue thereof.

The only evidence in the record being that the house is on the Kelly tracts of land and that these tracts are in the northwest ¼ of the southeast ¼ of section 17, and Sinclair was occupying it by permission, we must conclude that the trial court erred in rendering judgment for Sinclair on Kelly's claim for possession of the property.

The court's decree quieting title in Sinclair had no effect on Kelly's title. That decree was a nullity so far as Kelly was concerned, because it merely described the property as it appeared in the deed Sinclair received from McQuaid, and left the titles of the respective parties in exactly the same status they were in before the instant suit was instituted.

The judgment and decree are reversed and the cause remanded with directions to the trial court to enter judgment in favor of Kelly for possession of the property described in the complaint, and to dismiss Sinclair's counterclaim.